**GEORGE ALEXANDER, Plaintiff**

**v.**

**DAVID MONTOUTE, Defendant/Third-Party Plaintiff**

**v.**

**EDWARD MARTINA d/b/a ED AND CAM ASSOCIATES,
Third-Party Defendant**

Civil No. 313/82

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

September 26, 1983

DOUGLAS A. BRADY, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

GERALD T. GRONER, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

EDWARD OCEAN, ESQ., Christiansted, St. Croix, V.I., *for defendant/ third-party plaintiff*

ESZART WYNTER, ESQ., Frederiksted, St. Croix, V.I., *for third-party defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION
## I. INTRODUCTION

This matter was tried to the Court on Complaint, Answer and Counterclaim, Third-Party Complaint and Answer thereto.

Plaintiff sues defendant Montoute for property damage and personal injury arising out of the alleged negligence of said defendant in the operation of his motor vehicle, thereby causing an accident. Defendant denies negligence and counterclaims against plaintiff for the property damage and personal injury which he alleges he sustained, asserting the negligence of the plaintiff as the proximate cause thereof. He further asserts a Third-Party Complaint against Ed and Cam Associates, Inc.,[1] alleging that Third-Party defendant was negligent in the performance of its duties as his agent for the procurement of liability insurance, as a result of which defense of the Complaint was denied him, as was coverage for any losses arising out of the accident, which he became legally obligated to pay. Third-party defendant denies negligence as well as any insurance coverage.

## II. THE COMPLAINT AND COUNTERCLAIM

I find that the accident which occurred on March 19, 1982, was a proximate result of the negligence of the defendant Montoute arising out of the aggregate of facts that there was construction underway alongside the road; that this construction necessitated his driving a little farther to the right than he would otherwise have been driving, and that during the course of operating his motor vehicle, an oncoming car with its headlights on high beam made it difficult for him to see, and finally, that he nevertheless continued to drive as close as he could to the road's edge, where construction was underway. This in itself was negligent. A reasonable man operating a vehicle who is blinded by the headlights of oncoming vehicles, would stop rather than plunge on blindly.

In addition, I find as a fact, although Montoute was travelling northbound, the impact occurred in the southbound lane. The road is 15 feet 3 inches in width at the point where the accident occurred.

---

[1] This Third-Party action was instituted against "Edwin Martina, d/b/a Ed and Cam Associates." At trial, all parties stipulated that Ed and Cam Associates, Inc., should be joined as a third-party defendant. The President of the corporation asserted his authority to submit the corporation to the jurisdiction of the court, and asserted the same defenses offered by third-party defendant, Martina, individually.

Each lane, therefore, is approximately 7 feet 7-½ inches in width, there being only two traffic lanes at this point.

The point of impact which the officer referred to, although not necessarily the *precise point* where the cars first came together, is established by the fact that the southbound lane of the road is gouge marked 4 feet 1 inch from the side of the road as a result of the front end of one of the cars being driven by the impact into the hardtop.[2]

All of this is corroborated by the testimony of Angel Parilla, which, circumstantially supports these conclusions. Given the circumstances, that is, the existence of construction, the inability to move off the road because of that construction, the oncoming car with high beams that blinded the driver—all of these things, support the inference of negligence on the part of Montoute.

■ As a proximate result of the negligence of the defendant, plaintiff suffered both property damages and personal injury.

■ It is uncontradicted that the market value of plaintiff's 1970 Pontiac Catalina immediately before the accident was between $1,200.00 and $1,500.00 and that while it could have been repaired, the cost of repairs would have exceeded that market value. Plaintiff is entitled to recover the market value of the vehicle, but to allow a recovery in excess of $1,200.00 would require this court to, in some degree, indulge in speculation. We can conclude, to a reasonable certainty however, that the market value of the vehicle was not less than $1,200.00, and accordingly will award this amount as compensation for his property damage.

Furthermore, it was uncontradicted that plaintiff expended $362.00 in payment of hospital bills incurred as a result of this accident. He is entitled to recover this sum as well.

■ The medical records admitted in evidence establish that the plaintiff suffered a blow or blows to the chest, right shoulder and abdomen with resultant pain. He was treated in the emergency room and the following day admitted to the hospital for treatment for a period of two additional days. I find by a preponderance of the evidence that the aforesaid pain was continuing in nature and prevented plaintiff from performing his daily tasks in his business, such as lifting. An assistant was hired to perform these tasks for a period of two weeks at a cost to plaintiff of $100.00 per week. He is entitled to recover this item of consequential damage. I further find, by a preponderance of the evidence, that the pain which plaintiff

---

[2] See plaintiff's exhibit 5 in evidence.

37

suffered continued for a total of one month after the accident, that it was moderately severe and debilitating and that plaintiff is entitled to recover as compensation therefore the sum of $7,500.00.

■ Plaintiff has also asserted a claim for punitive damages which claim is hereby denied. This Court cannot and does not find that the acts and omissions of the defendant/third-party plaintiff were done with a bad motive or with a reckless indifference to the interests of others. See comment (b) to Restatement of Torts § 908 (1939).

Accordingly, a judgment in favor of plaintiff and against defendant shall enter in the total sum of $9,262.00, together with attorneys fees and costs.

Because no negligence is found on the part of the plaintiff, the counterclaim of the defendant will be dismissed, with prejudice.

### III. THE THIRD-PARTY COMPLAINT

The Third-Party Complaint, in its broadest terms, asserts that third-party plaintiff purchased insurance through third-party defendant, that he paid for insurance, but that when he made a claim as a result of this accident, he was told that there was no coverage.

Third-Party defendants, on the other hand, assert that no insurance was ever purchased, but, in the alternative, assert that if it was purchased, it was terminated by notice to the third-party plaintiff pursuant to the provisions of 22 V.I.C. § 827. Evidence purporting to establish that notice of termination was forwarded to defendant/third-party plaintiff more than five days prior to the policy termination date was offered and it was conceded that such notice was received. However, the controlling statute with regard to termination of automobile liability insurance is found at 20 V.I.C. § 701, et seq.[3]

20 V.I.C. § 701 provides that no motor vehicle shall be registered except upon the filing of proof of coverage by a satisfactory owners policy of liability insurance by the owner of said motor vehicle with the Commissioner of Public Safety. Although no certificate of insurance, per se, was admitted in evidence, third-party plaintiff did

---

[3] Title 22 has no application whatsoever with respect to the circumstances of this case, because Title 22 precedes in time by several years the enactment of Title 20, section 701 et seq. and, as applied to automobile liability insurance has been repealed by chapter 47 of Title 20 of the Virgin Islands Code. Every automobile liability insurance policy issued in the Virgin Islands must be in complete conformity with the provisions of chapter 47 of Title 20 and in those instances where there is a conflict, the provisions of chapter 47 shall be applied, even though they may not be set forth in the policy.

introduce (as Exhibit A) his motor vehicle registration covering the period October 15, 1981, to October 15, 1982. Contained thereon and relating to the existence of insurance was the notation "Ed and Camm (sic) Associates 1/22/81–1/22/82". From the language of § 701, supra, and absent evidence to the contrary, it may be inferred that the registration issued was accompanied by a certificate of insurance which was accepted by the Commissioner of Public Safety.

There is no dispute that Dome Insurance Company had issued an insurance policy, effective for the term January 21, 1981, to January 22, 1982. Whether said policy was issued by third-party defendant as a broker or an agent is of no significance, as the Contract of Insurance was, in any event, ratified by Dome by their acceptance of premiums. The policy, once effective, and certified to the Commissioner of Public Safety by the filing of the § 701 Certificate of Insurance, cannot be cancelled or otherwise terminated until at least ten (10) days after *a notice of cancellation or non-renewal is delivered to the Department of Public Safety.* 20 V.I.C. § 705.[4]

 Third-party defendant asserts that defendant Montoute's policy had lapsed by his failure to tender full payment of a renewal premium. This argument is without merit for two reasons. Initially, there was no renewal of the Dome Insurance policy contemplated by either party, the application having been made for issuance of a new policy under the Assigned Risk Plan. Secondly, the contents of the Virgin Islands Assigned Risk Application Insurance Form prepared by the Commissioner of Insurance, provides on its face an option of deferred, installment premium payment. In light of the fact that defendant had effected payment of the initial premium prior to the accident, I hold as a matter of law that the insurance policy was in effect during the critical period.

 This Court finds that Ed and Cam Associates, in corporate form, acted as a broker in this transaction and, therefore was the agent of the insured.[5] As agent of the insured, Ed and Cam owed

---

[4] When an insurance carrier has certified a motor vehicle liability policy in the manner provided in section 707 or section 708 of this chapter, *the insurance so certified shall not be cancelled or otherwise terminated until at least ten (10) days after a notice of cancellation or nonrenewal of the insurance so certified has been delivered or mailed to the Department of Public Safety,* except that such a policy subsequently procured and certified shall, on the effective date of its certification, terminate the insurance previously certified with respect to any vehicle designated in both certificates. (Emphasis added.)

[5] "An insurance broker, like other brokers, is primarily the agent of the first person

third-party plaintiff a duty to perform at that standard of expertise which would be expected of other brokers in this community, including, inter alia, the submission of claim of an insured to the ostensible insurance company for consideration. Acceptance or denial of an insured's claim is solely within the Judgment of the insurance company, and not discretionary with the broker since the broker is the *insured's* agent.

■ Although notice of the claim was given to third-party defendant by third-party plaintiff, there is simply no evidence which would indicate that Ed and Cam Associates took any action whatsoever to notify the insurer of the existence of a claim. Whether such a claim would have been honored is not a proper issue before the Court, as Dome Insurance Company is not a party to this law suit. In any event, Ed and Cam Associates failed to submit the claim on behalf of defendant Montoute, and this failure falls below the standard of care required of a licensed broker. By reason of such breach, I find third-party defendant negligent in the failure of performance of the duty owed to third-party plaintiff. Accordingly, third-party defendant is liable to Montoute for all sums for which Montoute has been adjudged liable to plaintiff.

A Judgment in conformity with this opinion is to be submitted.

---

who employs him, and is therefore ordinarily the agent of the insured as to matters connected with the procurement of the insurance, including representations and warranties. Absent some special condition or circumstance in the particular case, a broker is not the agent of the insurer and may not be converted into an agent for the insurer without some action on the part of the insurer, or existence of some facts by which his authority to represent it may be fairly inferred. The circumstances that, at the time the broker solicited business, he did not know which insurance company would issue the policy, and that the company which subsequently did issue a policy had had no prior dealings with the broker, indeed, had not heard of him, militate strongly against a conclusion that the broker was acting as the agent of such company." . . . (Footnotes omitted.) Couch on Insurance 2d § 25:94.