**IN RE: TUTU WATER WELLS CONTAMINATION LITIGATION,
THIS DOCUMENT RELATES TO TEXACO, INC. and
TEXACO CARIBBEAN, INC.
("TEXACO"), SUCCESSOR TO VERNON MORGAN**

Master Docket File No. 1989-107

Civil No. 1996-54(B)

District Court of the Virgin Islands

Division of St. Croix

December 15, 1998

ADDISON J. MEYERS, ESQ., O'Connor & Meyers, P.A., *Counsel for Third-Party Plaintiffs*, Coral Gables, FL.

CHARLES J. CURRAN, ESQ., *Co-Counsel for Third-Party Plaintiffs*, Tallahassee, FL.

TRESTON E. MOORE, ESQ., *Co-Counsel for Third-Party Plaintiffs*, St. Thomas, U.S. Virgin Islands.

KIMBERLY BOLDT, ESQ., *Co-Counsel for Third-Party Plaintiffs*, Russo, Wells & Associates, P.A., Miami, FL.

WILFREDO A. GEIGEL, ESQ., *For General Accident Co. of Puerto Rico, LTD.*, St. Croix, U.S. Virgin Islands.

DENISE FRANCOIS, ESQ., Hodge & Francois, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*, St. Thomas, VI.

HARRY P. COHEN, ESQ., Rosenman & Colin, LLP, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*, New York, NY.

ROBERT REEDER, ESQ., Cozen & O'Connor, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*, Philadelphia, PA.

BROTMAN, *District Judge (Sitting by Designation)*:

## I. INTRODUCTION AND BACKGROUND[1]

This case arises out of an insurance coverage dispute between Third-Party Plaintiffs Texaco Inc. and Texaco Caribbean, Inc., (collectively hereinafter "Texaco") as the Successor to Vernon Morgan, and several purported insurance carriers Vernon Morgan ("Morgan") claims have breached contracts to insure Morgan and

---

[1] This is the second opinion in a set of three opinions. For a more complete discussion of the background of this case, please refer to the *In Re: Tutu Water Wells Contamination*, Opinion on Motions To Dismiss, dated December 15th, 1998.

have refused, in bad faith, to defend and indemnify him against numerous environmental actions. These actions resulted from Morgan's alleged negligence in allowing hazardous chemicals to be discharged from underground storage tanks at the Tutu Texaco Service Station ("Service Station") into the Turpentine Run Aquifer in St. Thomas, United States Virgin Islands.

Beginning in 1972, Texaco leased property to Morgan from which Morgan operated the Service Station. In September 1976, Morgan discovered the loss of approximately 2,200 gallons of gasoline from a leaking pipe joint. In late 1977, Morgan discovered the loss of approximately 240 gallons of fuel due to a leak in a fuel delivery line. After both discoveries, Morgan apprised Texaco of the situation. On two occasions during the 1980's, one of three unlined underground storage tanks on the site were taken out of service due to a suspected leak.

In 1989, various claimants instituted litigation against Texaco and Morgan for damage caused by the aforementioned discharges of hazardous substances from storage tanks and fuel delivery system located at the Site. *See* ¶¶ 17-20 to Texaco's First Amended Third-Party Complaint, annexed to the Affidavit of Paul Leodori as Exhibit A ("Texaco's Complaint").

In December 1990 Texaco settled the matter entitled *Total Vision, Inc. d/b/a Tutu Water Co., et al v. Morgan, et al.*, (Case No. 1989-107) ("Total Vision") for $700,000. See ¶ 36 to Texaco's Complaint. In March 1992 Texaco settled the matter entitled *Four Winds Plaza Partnership v. Morgan, et al.* (Case No. 1989-220) ("*Four Winds*") for $2,250,000. *See* ¶ 37 to Texaco's Complaint. On or about February 1994, Texaco settled the matter *Harthman et al. v. Morgan, et al.* (Case No. 1989-220) for $1,000,000 ("Harthman"). All three settlements included the release of all claims against Morgan. *See* Texaco Complaint at ¶ 38.

Morgan was represented by John Zebedee, Esq. in *Total Vision, Four Winds,* and *Harthman.* Texaco paid John Zebedee, Esq. to represent Morgan in these matters. *See* Letter from John Zebedee to Michael Frantz dated August 14, 1991 attached as Exhibit N to Leodori Aff.).

Meanwhile, as litigation continued in the Virgin Islands concerning environmental damage, Texaco filed an action against numer-

ous insurers in the Superior Court of the State of California for the County of Los Angeles entitled *Four Star Oil & Gas Company, et al. v. Allianz Insurance Company et al.*, Case No. BC 036944 ("California Litigation"). Included among Texaco's claims in the California Litigation were its incurred and anticipated liabilities arising at and from the Site. (*See* Exhibits F, G and H to Leodori Affidavit) Texaco ultimately agreed to a comprehensive release of environmental coverage claims against various insurance companies in the context of the California Litigation. Specifically, pursuant to an "AGREEMENT OF SETTLEMENT, COMPROMISE AND RELEASE" ("Release Agreement") dated May 10, 1993, CIGNA[2] agreed to pay Texaco $20,250,000. The Release Agreement provided that:

> CIGNA shall have no further obligation under the Policies or otherwise to pay for, or to make indemnity or defense payments with respect to, Environmental Damage Claims other than the payments [of $20,250,000] specified in paragraph 3.2 hereof.

Release Agreement at ¶ 3.5

Pursuant to the Release Agreement, a "claim" was defined as:

> any past, present or future actual or potential claims, insurance claims, reinsurance claims, cross-complaints, third-party claims, rights, proceedings, demands, requests, suits, lawsuits, administrative proceedings, causes of actions, orders, actions, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, torts, controversies, judgments; executions, liabilities and obligations whatsoever whether in law or equity, including without limitation any and all claims for bad faith, alleged breach of the duty of good faith and fair

---

[2]In the Release Agreement, "CIGNA" included Heddington Insurance Limited, CIGNA Insurance Company, Insurance Company of North America, Insurance Company of North America (U.K.) Limited, CIGNA Property and Casualty Insurance Company, California Union Insurance Company, Atlantic Employers Insurance Company, CIGNA insurance Company of Illinois, CIGNA Insurance Company of Texas, Pacific Employers Insurance Company, CIGNA Reinsurance Company (U.K.) Limited, Central National Insurance Company of Omaha, and Highlands Insurance Company.

dealing, claims for any other alleged misconduct or extracontractual claims.

The agreement in ¶ 2.5 defined "Environmental Damage Claims" as:

All Claims, losses sustained or costs incurred in connection with Environmental Damage. Environmental Damage Claims include without limitation, any and all Past, existing, future or potential: (a) Claims brought by or behalf of any Person or any actions taken by Texaco (voluntarily or otherwise) in response to any such Claims because of losses sustained or involving, arising out of, or related in any way to Environmental Damage, including, without limitation, Claims to recover cleanup or remediation costs, to impose statutory fines or penalties, or to obtain injunctive or declaratory relief. . .

Furthermore, ¶ 2.9 defined Texaco:

"Texaco" means Texaco Inc., its past, present, and future employees, officers, directors, principals, subsidiaries, affiliates, agents, attorneys, representatives, predecessors, successors and assigns, and any Person insured by any of the Policies including, but not limited to, any named insured, person insured, additional insured, additional named insured, and all Persons identified as Plaintiffs in the Fourth Amended Complaint filed by Texaco in the California Action, including but not limited to, all Persons identified in Exhibits A to D to said Complaint. Notwithstanding anything else in this paragraph 2.9 to the contrary, Texaco shall not include Texaco Canada Inc.

Finally, in ¶ 4.1, the Release Agreement states that:

4.1. In consideration of the promises contained in the Agreement, except as otherwise provided in paragraphs 2.5 and 2.6 herein, and except with regard to any obligation CIGNA may independently owe Texaco Canada, Texaco and HIL hereby release and discharge CIGNA from any liability, duty or obligation, known or unknown,

(including, without limitation, any duty to investigate, defend or indemnify) for any and all past, pending, or future Environmental Damage Claims under the Policies.

Two years after the Release Agreement was executed, Texaco settled all of its outstanding claims against Morgan in an agreement executed June 27, 1995 entitled "CONSENT TO JUDGMENT AND ASSIGNMENT" ("the Assignment"). Under the Assignment, Morgan consented to the entry of judgment against him on the underlying actions in the amount of $16,682,392. Assignment at ¶ 2. Having paid off all claims on Morgan's behalf, Texaco nevertheless agreed not to execute, record, or collect on its judgment against him. *Id.* at ¶ 7. In exchange, Morgan agreed to assign to Texaco all claims that Morgan had against "any and all insurance carriers insuring Morgan and/or Texaco Tutu Service Station, for the claims of the Plaintiffs and the crossclaims of Texaco for contribution and indemnity . . ." *Id.* at ¶ 3.

On December 7, 1995, Morgan filed a Third-Party Complaint against several insurers, claiming bad faith and seeking defense costs and indemnity for alleged policies issued by the insurers to Morgan, respecting alleged contamination arising from the leaking underground storage tanks and fuel delivery system at the Site. The defendants included Fireman's Fund Insurance Company, AFIA Worldwide Insurance, CIGNA Corporation, CIGNA International Corporation, Insurance Company of North America, and General Accident Insurance Co. Puerto Rico, Ltd., and American Trust Insurance Co., Ltd. The alleged policies produced by Morgan contain a pollution exclusion. *See* Statement of Material Facts Not at Issue in Support of Plaintiff's Motion for Partial Summary Judgment on the Duty to Defend.

On March 2, 1998, this Court found that Texaco, not Morgan, was the real party in interest as "successor" to Morgan. (*See* ORDER ON MOTIONS FOR SUMMARY JUDGMENT entered on March 2, 1998 annexed to the Affidavit of Paul Leodori as Exhibit L) (*See* OPINION ON MOTIONS FOR SUMMARY JUDGMENT dated March 2, 1998 annexed to the Affidavit of Paul Leodori as Exhibit M).

In Texaco's first-amended third-party complaint, filed April 3, 1998, Texaco claims include "bad faith" and "failure to defend and

indemnify" against several of the insurance companies with which Vernon Morgan had contracted: Texaco as successor to Vernon Morgan seeks insurance coverage and payment of its underlying disputes against Morgan as reflected in its judgment of $16,682,392.

Texaco now seeks partial summary judgment against Fireman's Fund based upon Morgan's Fireman's Fund insurance policies. CIGNA[3] cross-moves for summary judgment based on the same insurance policies and the Release Agreement. This Opinion discusses both of these motions.

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

The standard for granting summary judgment is a stringent but surmountable one. That is, summary judgment is appropriate only when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence in favor of the non-moving party. *Serbin*, 96 F.3d at 69 n.2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

■ Supreme Court decisions mandate that a motion for summary judgment must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Lawrence v. National Westminster Bank of New Jersey*, F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). Moreover, once the moving party has

---

[3] "CIGNA," for purposes of administrative convenience signifies Third-Party Defendants CIGNA Corporation, Fireman's Fund Insurance Company, as a former member company of AFIA ("Firemen's Fund"), AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America.

carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Instead, the non-moving party must "by affidavits or by depositions and admissions on file 'make a showing sufficient to establish [that a genuine issue of material fact exists as to each] element essential to that party's case.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1991) (declaring that a non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## B. THE POLLUTION EXCLUSION

Texaco argues that the Fireman's Fund policies during the relevant years provided Morgan with a promise to "defend any suit against the insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent." *See* Policy Attached As Exhibit B to Plaintiff's Motion For Partial Summary Judgment on the Duty to Defend and Memorandum of Law ("Plaintiff's Memo."). Texaco argues that, as a matter of law, the claims brought by *Total Vision*, *Four Winds*, and *Harthman* against Morgan, concerning his operations of the garage, fall within the scope of coverage provided by Fireman's Fund's insurance policies. CIGNA argues that the pollution exclusion included in the relevant policies is unambiguous and as a matter of law precludes coverage under the facts of this case. *See* Memorandum of Law of CIGNA in Support of Crossmotion for Defense, Indemnity and to be Held Harmless and Opposition to Texaco Inc.'s and Texaco Caribbean Inc.'s Motion for Partial Summary Judgment on the Duty to Defend ("CIGNA's Response Memo.") at 22 and Attached as Exhibit R to Leodori Aff.

The pollution exclusion provides that:

This insurance does not apply:

(o) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors,

272

soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*See* Attached as Exhibit F of Leodori Aff. (emphasis in original).

## 1. TEXACO'S MOTION FOR SUMMARY JUDGMENT

In *Buntin v. Continental Insurance Co.*, 525 F. Supp. 1077, 1080 (D.C.V.I. 1981), this Court recognized that "most insurance policies expressly obligate the insurer to assume the defense of lawsuits arising under the policy." Specifically, the duty to defend "comes into play when a claim is made against an insured which may potentially be covered by the policy." *Hess Oil Virgin Islands Corp. v. Firemen's Fund Insurance Company, et al.*, 626 F. Supp. 882 (D.V.I. 1986). In determining whether a duty to defend exists, "the factual allegations of [the] complaint . . . are controlling." *Enron Corporation v. Lawyers Title Insurance Corporation, et al.*, 940 F.2d 307 (8th Cir. 1991), *citing C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 483 (3d Cir. 1981) (quotation omitted; emphasis in original).

Interpretation of insurance contracts is governed by the Virgin Islands Insurance Code, 22 V.I.C. §§ 1-1698, which provides:

Every insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement, or application attached to and made a part hereof.

22 V.I.C. § 846. Furthermore, in interpreting an insurance policy, Virgin Island courts should read insurance policy provisions within the context of the entire policy, avoiding ambiguities whenever possible. *Coakley Bay Condominium Association*, 26 V.I. 348, 770 F. Supp. 1046, 1051 (D.V.I. 1991).

In the instant action, the insurance provision provides that Fireman's Fund "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages

273

because of . . . Coverage H. property damage. *See* Fireman's Fund Insurance Policy, Attached As Exhibit B to Texaco's Memo. If this language alone were relevant to the issue of defense, the Court would have no problem with granting to Texaco summary judgment. This language, however, is not the only pertinent wording in the policy, and as discussed above, this Court is obligated to read provisions within the context of the entire policy.

■ Although a general duty to defend exists within the policy, the wording of the pollution exclusion clause creates an issue of fact as to whether or not such a duty is precluded by the exclusion. The exclusions specifically provide, in relevant part, for property damage "arising out of the discharge . . . of . . . chemicals, liquids or gases . . . into or upon land, the atmosphere or any . . . body of water. . ." Therefore, a reasonable juror could find that the instant issue of coverage arises under the exclusion, and therefore, Fireman's Fund would not be under an obligation to defend Morgan against the claims brought against him. As a result, Texaco's motion will be denied.[4]

## 2. CIGNA'S MOTION FOR SUMMARY JUDGMENT

CIGNA argues that the pollution exclusion provision of the insurance policy excludes coverage under the facts of this case. Specifically, CIGNA contends that the leakage of gasoline was a long term occurrence and therefore does not fall under the "sudden and accidental" exception to the pollution exclusion, which has the effect of removing an incident from exclusion by Fireman Fund's policy. *See* CIGNA's Response at 32.

Neither the courts of the Virgin Islands, nor the Restatements of Law have discussed the pollution exclusion in regard to the "sudden and accidental" provision. In instances where there is no Virgin Island law on a topic, courts must first turn to the Restatements of Law, as adopted by the American Law Institute. Where the Restatements do not provide guidance, then the common law as generally understood in the United States applies. 1 V.I.C. § 4.

---

[4] Because this Court is denying Texaco's motion for summary judgment, it is unnecessary to address points VI, VII, and VIII of CIGNA's Response memorandum. The Court, however, must continue its analysis, as CIGNA in its Response to Texaco's motion, seeks summary judgment on the same issue.

There is, across the United States, disagreement between insureds and insurers concerning the meaning of the term 'sudden and accidental' within the context of the pollution exclusion. *See Northern Insurance Company of New York v. Aardvark Associates, Inc.,* 942 F.2d 189 (3d Cir. 1991). CIGNA makes a prolonged argument that this Court, like many across the United States, should adopt the view that "sudden and accidental" means "abrupt." *See* CIGNA's Response Memo. at 22-34; *See e.g. E.I. DuPont de Nemours and Company v. Allstate Insurance Co.,* 693 A.2d 1059 (Del. 1997); *Armotek Industries, Inc. v. Employers Insurance of Wausau,* 952 F.2d 756 (3d Cir. 1991). Consequently, CIGNA contends, as a matter of law, Fireman's Fund's duty to defend is precluded by the exclusion. *See* CIGNA's Response Memo. at 32.

■ Despite CIGNA's argument, this Court need not determine the definition of "sudden and accidental," as there remains a genuine issue of material fact as to the onset and duration of the alleged leaks that occurred. CIGNA cites to Texaco's November 30, 1987 response to EPA's Information Request as evidence of the protracted timing of the leaks. *See* Exhibit B to Leodori Affidavit. Neither Texaco's response of November 30, 1987, nor any submission to this Court, however, makes clear whether or not the suspected leaks that occurred were abrupt or protracted in timing. Looking at the evidence in a light most favorable to the non-moving party, a reasonable juror could find that the leaks were "abrupt" in nature. If found to be abrupt, the ambiguity of the term "sudden and accidental" would be irrelevant to the case. Thus, a genuine issue remains to be heard and decided by the trier of fact as to Fireman's Fund's duty to defend.

## C. KNOWN LOSS DOCTRINE

CIGNA also contends that the doctrines of "Known Loss" and "Loss in Progress" preclude any obligations on CIGNA's part to either Morgan or Texaco under the alleged policies. *See* CIGNA's Response Memo. at 34. The known loss doctrine is "based on the fundamental principle that insurance is intended to cover risks which are not definitely known to the insured." *Continental Insurance Company v. Beecham, Inc.,* 836 F. Supp. 1027, 1045 (D.N.J. 1993).

In contrast, the loss in progress doctrine provides that "one cannot insure a loss that is already in progress." *Id.*

The doctrines are founded in the attempt to prevent fraud. *See Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172, 179 (6th Cir. 1993). Insurance policies are created "to protect against fortuitous occasions, but when they are misused to protect against certainties, fraud results." *Astro Pak Corporation v. Fireman's Fund Insurance Company*, 284 N.J. Super. 491, 497; 665 A.2d 1113, 1116 (App. Div. N.J. 1995) (citations omitted). Specificity is vital to these doctrines. In pleading these arguments, "it is crucial for the insurer to clearly articulate that the risk or loss concern refers to a specific risk or loss. In other the words, the doctrine does not apply when an insured simply knows there is 'a risk of loss, because knowledge of that fact is the very purpose of acquiring insurance. . .'" 7 Couch on Insurance § 102:8 (3d ed.).

■ CIGNA argues that since Morgan and Texaco knew about the substantial discharge of gasoline from Texaco's underground storage tanks and fuel delivery system by September 1976, the doctrines of known loss and loss in progress preclude any alleged insurance coverage after the date of discovery. *See* CIGNA's Response Memo. at 34. This argument lacks merit. Each alleged leak was a separate and distinct occurrence. For example, Fireman's Fund issued policies from January 3, 1976 through January 3, 1977, during which time an alleged 2,200 gallons of gasoline leaked from a pipe joint. This is one incident of possible liability about which CIGNA does not contest its potential coverage. Fireman Fund also insured Morgan from January 3, 1977 until January 3, 1978, during which time a separate incident occurred due to a leak in a fuel delivery line. This incident had nothing to do with the original leak and therefore is not a "known loss" or "loss in progress." In reviewing the evidence submitted thus far, Fireman's Fund has not demonstrated as a matter of law that the incidents of leakage were a continuation of one another. Accordingly, without other proof from CIGNA, the doctrines of known loss and loss in progress are not applicable to the instant action.

276

## D. THE RELEASE AGREEMENT

CIGNA's crossmotion also seeks summary judgment on Texaco's duty to defend, indemnify and hold harmless CIGNA, pursuant to the terms of the Release Agreement executed between Texaco and CIGNA. CIGNA specifically argues that in reading the definition of "Environmental Damage Claims" stated in ¶ 2.5 in conjunction with the Release language of ¶ 3.5, "it is clear that Texaco covenanted and agreed not to bring an action of the nature now pending in this Court against CIGNA." *See* CIGNA's Response Memo. at 12.

Despite this contention, the Release Agreement does not as a matter of law state that if Texaco becomes a real party in interest to another person or entities' claims, it may not pursue those claims. Whether or not the agreement was intended to include Texaco's current position as Successor to Vernon Morgan is the ultimate issue of material fact and must be presented to a jury to determine.

Second, CIGNA contends that by entering into the Assignment with Morgan,[5] Texaco "in effect, transferred its 'Environmental Damage Claims' to Morgan," thereby violating the warranties contained in the CIGNA/Texaco Release Agreement. CIGNA's Response at 17. Despite this contention, a jury could very well find, given the evidence and in light of the full meaning of the Release Agreement's terms, that even if Texaco had been paying Morgan's defense costs, the Assignment agreement between Texaco and Morgan had nothing to do with the Release Agreement between CIGNA and Texaco, so that the two agreements were entirely separate matters. Therefore, whether or not the Assignment agreement between Texaco and Morgan transferred any claims that were included in the scope of the Release Agreement is a genuine issue of material fact.

In addition, CIGNA argues that Texaco settled *Total Vision, Four Winds,* and *Harthman* actions on Morgan's behalf. However, CIGNA cannot, as a matter of law, demonstrate that this signifies

---

[5] In its Reply Brief, CIGNA attempts to argue that it is Tutu Texaco Service Station, Inc. not Morgan who is insured under Policy SMP 4926. This is an unsupported argument, as Morgan, the sole stockholder and employee of the service station would be included as a "person insured" under the coverage.

that the Release Agreement includes by definition all of Morgan's interests. For this Court to jump to such a conclusion without a trial of the facts would ultimately transform Texaco, an oil company, into an insurance provider for Vernon Morgan, when a jury could find that CIGNA was the intended insurance company.

Finally, CIGNA contends that an agreement must be, as a matter of law, construed so as to give effect to all of its parts, and any construction which would render any of its terms meaningless must be avoided. *See* CIGNA's Response at 18, *citing Western United Life Assurance Company v. Hayden*, 64 F.3d 833, 837 (3d Cir. 1995); *Pan American Realty Trust v. Twenty-One Kings, Inc.*, 408 F.2d 937, 939 (3d Cir. 1969). The Release Agreement can be construed to give effect to all of its parts without necessarily including Texaco, as successor to Vernon Morgan, bringing claims against CIGNA.

■ For example, the Release Agreement states that "Texaco and HIL hereby release and discharge CIGNA from any liability, duty or obligation, . . ." Release Agreement at ¶ 4.1 "Texaco" is defined in ¶ 2.9. Despite this seemingly comprehensive definition of Texaco, there is no demonstration, as a matter of law, that "Texaco" would include Vernon Morgan's claims. Following this logic, it is an issue of material fact as to whether or not Morgan is Texaco's "Predecessor" (or any other inclusive term) with respect to the Release Agreement. The Release Agreement does not, as a matter of law, include claims brought on behalf of Vernon Morgan. Therefore, no responsibility on the part of Texaco to defend, indemnify, and hold CIGNA harmless, is automatically triggered pursuant to the Release Agreement. A jury must first interpret the limits of the Release Agreement.

**III. CONCLUSION**

For the above stated reasons, Texaco and CIGNA's motions for partial summary judgment are denied.

Dated: December 15, 1998