# IN RE: TUTU WATER WELLS CONTAMINATION LITIGATION, THIS DOCUMENT RELATES TO TEXACO, INC. AND TEXACO CARIBBEAN, INC. ("TEXACO"), SUCCESSOR TO VERNON MORGAN

D.C. Civil No. 1996-54(B)

District Court of the Virgin Islands

Division of St. Croix

November 24, 1999

ADDISON J. MEYERS, ESQ., *O'Connor & Meyers, P.A.*, Coral Gables, FL, for Plaintiffs

CHARLES J. CURRAN, ESQ., Tallahassee, FL, *for Plaintiffs*

TRESTON E. MOORE, ESQ., St. Thomas, U.S.V.I., *for Plaintiffs*

KIMBERLY BOLDT, ESQ., *The Boldt Law Firm*, Miami, FL, *for Plaintiffs*

WILFREDO A. GEIGEL, ESQ., Christiansted, St. Croix U.S.V.I., *for General Accident Co. of Puerto Rico, LTD*

DENISE FRANCOIS, ESQ., *Hodge & Francois*, St. Thomas, VI, *for CIGNA Corporation, Fireman's Fund Insurance Company, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

HARRY P. COHEN, ESQ., *Rosenman & Colin, LLP*, New York, NY, *for CIGNA Corporation, Fireman's Fund Insurance Company, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

ROBERT REEDER, ESQ., THOMAS MCKAY, III, ESQ., *Cozen & O'Connor*, Philadelphia, PA, *for CIGNA Corporation, Fireman's Fund Insurance Company, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

THOMAS McKAY, III, ESQ., *Cozen & O'Connor, for CIGNA Corporation, Fireman's Fund Insurance Company*

BROTMAN, *Judge*

300

## I. INTRODUCTION AND BACKGROUND

This case arises out of an insurance coverage dispute between Third-Party Plaintiffs Texaco Inc. and Texaco Caribbean, Inc., (collectively hereinafter "Texaco") as the Successor to Vernon Morgan, and several purported insurance carriers it claims have breached contracts to insure Vernon Morgan and have refused, in bad faith, to defend and indemnify him against numerous environmental actions. These actions resulted from Vernon Morgan's alleged negligence in allowing hazardous chemicals to be discharged from underground storage tanks at the Tutu Texaco Service Station ("Service Station") into the Turpentine Run Aquifer in St. Thomas, United States Virgin Islands.

Beginning in 1972, Texaco Caribbean Inc., a subsidiary of Texaco Inc. leased property to Morgan from which Morgan operated the Tutu Texaco Service Station. Morgan is the owner, sole shareholder, and an employee of Tutu Texaco Service Station. In September 1976, Morgan discovered the loss of approximately 2,200 gallons of gasoline from a leaking pipe joint. In late 1977, Morgan discovered the loss of approximately 240 gallons of fuel due to a leak in a fuel delivery line. After both discoveries, Morgan apprised Texaco of the situation. In addition, on two occasions during the 1980's, one of three unlined underground storage tanks on the site were taken out of service due to a suspected leak.

In 1989, various claimants instituted litigation against Texaco and Morgan for damages caused by the aforementioned discharges of hazardous substances from the storage tanks and fuel delivery system located at the Site. (*See* Texaco's Appendix to Omnibus Statement of Material Facts at Issue ("Omnibus Facts") at Ex. 1.) Upon receipt of the complaints Morgan sent notification of the claims to the West Indies Insurance Agency, which had issued Morgan's insurance policies. (*See* Texaco's Statement of Material Facts Not at Issue in Support of Motion for Partial Summary Judgment on General Agency and Notice at ¶¶ 2-6.)

Morgan was represented by John Zebedee, Esq. in *Total Vision*, *Four Winds*, and *Harthman* ("underlying litigation"). Payment for Morgan's defense was originally provided by American Trust Insurance ("ATI") after June 5, 1990. On or about May 1991, ATI refused to continue to provide Morgan a defense in the underlying

301

litigation. (*See* Cigna's Statement of Undisputed Material Facts in Support of Fireman's Fund's and Cigna's Motion for Summary Judgment: Third-Party Plaintiffs' Claims for Bad Faith as a Matter of Law (hereinafter "Undisputed Bad Faith Facts") at ¶¶ 1-3.)

During this time period, Zebedee sought coverage for Morgan from defendant Cigna[1] (*See* Cigna's Undisputed Bad Faith Facts at ¶¶ 13-40.) After numerous correspondence between Zebedee and Cigna employees failed to provide complete details of the relevant policy's terms and conditions, *see id.*, the insurer refused coverage via an October 28, 1991 letter which stated, in pertinent part, that:

> Despite our best efforts . . . we have been unable to produce, nor have you been able to produce, copies of the actual policies issued to Morgan and/or Tutu Texaco. Without more information, we are unable to confirm the existence and/or terms, conditions, limitations or endorsements of these policies. Accordingly, since we cannot determine what coverage may have been written, we are further unable to provide any defense or indemnity to Morgan and/or Tutu Texaco for these claims.
>
> In the event you are able to locate additional information which might indicate that our further review of these claims is warranted or should you otherwise wish to discuss this matter, please feel free to contact me at the above number.

(Omnibus Facts at Ex. 66). It is important to note that just prior to its October 28, 1991 refusal letter, Zebedee had contacted Cigna and informed the defendant that Morgan was considering a

---

[1] The Court notes that recently, at oral argument held on November 18th, 1999, the parties stipulated on the record that the named defendants AFIA, CIGNA Corporation, CIGNA International Corporation and Insurance Company of North America were dismissed with prejudice from the case while Fireman's Fund Insurance Company ("Fireman's Fund") remained as a defendant. The parties further agreed that any action by Cigna entities would be attributable to defendant Fireman's Fund. Because this stipulation occurred subsequent to the filing of the instant motion, and since the parties agreed that any actions by Cigna entities will be attributable to Fireman's Fund, for purposes of administrative convenience "Cigna," signifies the actions of Third-Party Defendants CIGNA Corporation, Fireman's Fund Insurance Company, ("Firemen's Fund"), AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America.

proposal from Texaco which contemplated Texaco's assumption of Morgan's defense costs in exchange for an assignment of rights. (*See* Ex. 13 of Cigna's Appendix to Cigna's Br.: Plaintiff's Claims for Bad Faith Fail as a Matter of Law.)

Meanwhile, as litigation continued in the Virgin Islands concerning environmental damage, Texaco on its own behalf filed an action against numerous insurers in the Superior Court of the State of California for the County of Los Angeles entitled *Four Star Oil & Gas Company, et al. v. Allianz Insurance Company et al.*, Case No. BC 036944 ("California Litigation"). Included among Texaco's claims in the California Litigation were its incurred and anticipated liabilities arising at and from the Site. (*See* Cigna's Statement of Undisputed Material Facts in Support of Fireman's Fund and Cigna's Motion for Partial Summary Judgment Based Upon the Four Star Agreement (hereinafter "Undisputed Four Star Facts") at ¶¶ 7-11. Texaco ultimately agreed to a comprehensive release of environmental coverage claims against various insurance companies in the context of the California Litigation. Specifically, pursuant to an "Agreement of Settlement, Compromise and Release" dated May 10, 1993, Cigna agreed to pay Texaco $20,250,000.[2] *See* Fireman's Fund's and Cigna's Motion for Partial Summary Judgment Based Upon the Four Star Agreement at Ex. 1 ("Release Agreement").) The Release Agreement provided that:

> CIGNA shall have no further obligation under the Policies or otherwise to pay for, or to make indemnity or defense payments with respect to, Environmental Damage Claims other than the payments [of $20,250,000] specified in paragraph 3.2 hereof.

Release Agreement at ¶ 3.5

> Pursuant to the Release Agreement, a "claim" was defined as:

---

[2]In the Release Agreement, "CIGNA" included CIGNA Insurance Company, Insurance Company of North America, Insurance Company of North America (U.K.) Limited, CIGNA Property and Casualty Insurance Company, California Union Insurance Company, Atlantic Employers Insurance Company, CIGNA insurance Company of Illinois, CIGNA Insurance Company of Texas, Pacific Employers Insurance Company, CIGNA Reinsurance Company (U.K.) Limited, Central National Insurance Company of Omaha, and Highlands Insurance Company.

any past, present or future actual or potential claims, insurance claims, reinsurance claims, cross-complaints, third-party claims, rights, proceedings, demands, requests, suits, lawsuits, administrative proceedings, causes of actions, orders, actions, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, torts, controversies, judgments; executions, liabilities and obligations whatsoever whether in law or equity, including without limitation any and all claims for bad faith, alleged breach of the duty of good faith and fair dealing, claims for any other alleged misconduct or extracontractual claims.

Release Agreement at ¶ 2.3.

The agreement in ¶ 2.5 defined "Environmental Damage Claims" as:

All Claims, losses sustained or costs incurred in connection with Environmental Damage. Environmental Damage Claims include without limitation, any and all Past, existing, future or potential: (a) Claims brought by or behalf of any Person or any actions taken by Texaco (voluntarily or otherwise) in response to any such Claims because of losses sustained or involving, arising out of, or related in any way to Environmental Damage, including, without limitation, Claims to recover cleanup or remediation costs, to impose statutory fines or penalties, or to obtain injunctive or declaratory relief[.]

*Id.* at ¶ 2.5.

Finally, in ¶ 4.1, the Release Agreement states that:

In consideration of the promises contained in the Agreement, except as otherwise provided in paragraphs 2.5 and 2.6 herein, and except with regard to any obligation CIGNA may independently owe Texaco Canada, Texaco and HIL hereby release and discharge CIGNA from any liability, duty or obligation, known or unknown, (including, without limitation, any duty to investigate, defend or

indemnify) for any and all past, pending, or future
Environmental Damage Claims under the Policies.

*Id.* at 4.1.

Two years after the Release Agreement was executed, Texaco
settled all of its outstanding claims against Morgan in an agree-
ment executed June 27, 1995 entitled "Consent To Judgment and
Assignment" ("the Assignment"). *See* Omnibus Facts at Ex. 70.
Under the Assignment, Morgan consented to the entry of judg-
ment against him on the underlying actions in the amount of
$16,682,392. Assignment at ¶ 2. Texaco agreed not to execute,
record, or collect on its judgment against him. *Id.* at ¶ 7. In
exchange, Morgan agreed to assign to Texaco all claims that
Morgan had against "any and all insurance carriers insuring
Morgan and/or Texaco Tutu Service Station, for the claims of the
Plaintiffs and the crossclaims of Texaco for contribution and
indemnity[.]" *Id.* at ¶ 3.

On December 7, 1995, Morgan filed a Third-Party Complaint
against various insurers claiming bad faith and seeking defense
costs and indemnity under the alleged policies issued to Morgan.
On March 2, 1998, this Court found that Texaco, not Morgan, was
the real party in interest as "successor" to Morgan. (*See* Order on
Motions For Summary Judgment entered on March 2, 1998) (*See*
Opinion On Motions For Summary Judgment dated March 2,
1998). Accordingly Texaco was substituted as a third party plain-
tiff. (*See* Opinion On Motions For Summary Judgment dated March
2, 1998 at 12)

In its amended third-party complaint, Texaco asserted "bad
faith" and "failure to defend and indemnify claims" against the
various insurance companies with which Vernon Morgan had
contracted, including Cigna and General Accident. This opinion
addresses several summary judgment motions pending before this
Court that are related to these claims.

Cigna's first motion seeks summary judgment against Texaco
with respect to its bad faith claims. The defendant contends that its
investigatory efforts, coupled with the plaintiff's failure to provide
the insurer with the relevant policy terms and conditions prior to
Cigna's denial of coverage, constitute an arguable basis for its

refusal and therefore Texaco's bad faith claims fail as a matter of law. The insurer's second motion argues that the provisions of the Four Star Agreement released Cigna from liability to Texaco and accordingly the defendant is entitled to partial summary judgment.

In addition, the Court addresses two motions filed by Texaco. Texaco's first motion seeks partial summary judgment as to Cigna and General Accident's affirmative defenses of lack of notice. Texaco argues that the West Indies Insurance Agency served as an agent for both insurers and therefore Morgan's service of notice upon West Indies constituted notice to the defendants. The second motion asserts that the insurers' affirmative defenses and counterclaims for reverse and comparative bad faith should not be recognized as a matter of law and thus partial summary judgment should be granted in Texaco's favor with respect to these matters.

## II. DISCUSSION

### 1. STANDARD FOR SUMMARY JUDGMENT

The standard for granting summary judgment is a stringent but surmountable one. That is, summary judgment is appropriate only when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence in favor of the non-moving party. *Serbin*, 96 F.3d at 69 n.2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

Supreme Court decisions mandate that a motion for summary judgment must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Lawrence v. National Westminster Bank of New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of

material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Instead, the non-moving party must "by affidavits or by depositions and admissions on file 'mak[e] a showing sufficient to establish [that a genuine issue of material fact exists as to each] element essential to that party's case.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1991) (declaring that a non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## 2. CIGNA'S SUMMARY JUDGMENT MOTION: BAD FAITH

The leading Virgin Island case involving "bad faith" insurance claims is *Justin v. Guardian Ins. Co., Inc.*, 670 F. Supp. 614 (D.V.I. 1987). In *Justin* the court set out a five pronged test which requires the insured in a bad faith claim to prove:

> 1) the existence of an insurance contract between the parties and a breach by the insurer;
> 2) intentional refusal to pay the claim;
> 3) the non-existence of any reasonably legitimate or arguable reason for the refusal (debatable reason) either in law or fact;
> 4) the insurer's knowledge of the absence of such a debatable reason *or*
> 5) when the plaintiff argues that the intentional failure results from the failure of the insurer to determine the existence of an arguable basis, the plaintiff must prove the insurer's intentional failure to determine the existence of such a debatable reason.

*Id.* at 617.

Cigna advances essentially three arguments in support of its contention that it is entitled to judgment as a matter of law. First, the defendant argues that Morgan's failure to provide Cigna with the complete terms and conditions of the policy prior to its denial

of coverage relieved them of the duty to defend. Second, the insurer contends that the "substantial and significant efforts" of its employees, coupled with the incomplete manner in which the insured submitted information, provided an arguable reason for its refusal to defend Morgan. (Cigna Br. at 20) Lastly Cigna contends that the insured's actions bar any recovery for bad faith. (*See* Cigna Br. at 33-36) After reviewing the parties' submissions, the Court concludes that material questions of fact remain and that therefore Cigna's summary judgment motion should be denied.

### a) Failure to Provide Proof of Coverage Prior to Denial

Defendant's first argument relies upon the principle that the insured bears the burden of establishing a valid policy claim. *See Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 23 (3d Cir. 1985). Although it fails to cite any caselaw supporting its assertion, Cigna contends that this burden applies not merely at the time of trial, but also at the time coverage is requested. (Cigna Reply Br. at 9.) Accordingly the defendant stresses the fact that prior to its denial of coverage, Vernon Morgan's attorney John Zebedee failed to provide the insurer with a copy of the back of form L4016S, which included the relevant policy terms. Thus Cigna contends the plaintiff failed to establish the existence of a valid policy and therefore its decision to deny coverage was correct as a matter of law.

While Texaco concedes that the insured bears the burden of proving both the terms and existence of a policy, it argues that such a requirement is merely a necessary element for recovery at trial, not an evidentiary condition that must be satisfied before an insurer agrees to defend a potential insured. (*See* Texaco Br. at 2.) Like the defendants, Texaco can not point to a single authority which expressly supports its contention. Thus, it appears that the issue of whether the insured is required to provide detailed proof of a policy's terms before a duty to defend attaches is a matter of first impression for the Court.

After carefully weighing the relevant considerations, this Court rejects Cigna's contention that at the time coverage is requested, the insured bears the burden of proving both the existence of a policy as well as its terms and conditions. Virgin Islands caselaw, as well as the laws of other states within this circuit, imposes a

duty upon the insurer to act in good faith towards the insured. *See Justin*, 670 F. Supp. at 616; *see also Polselli v. Nationwide Mutual Fire Ins. Co.*, 126 F.3d 524, 530 (3d Cir. 1997) explaining that "the Pennsylvania Supreme Court has long recognized that an insurer must act with the 'utmost' good faith towards its insured)"; *Garcia v. Snedeker*, 199 N.J. Super. 254, 489 A.2d 175, 180 (N.J. App.Div. 1985); *Aetna Cas. and Sur. Co. v. Mantakounis*, 1996 Del. Super. LEXIS 77, No. Civ.A. 91 C-10-142-JOH, 1996 WL 190046 at *3 (Del. Super. Ct. March 5, 1996). Recognizing the uniqueness inherent within the relationship, some states within the circuit place a heightened duty upon the insurer of *"utmost* good faith." See *Polselli*, 126 F.3d at 530; *Garcia*, 489 A.2d at 180.

Requiring the insured to prove all terms and conditions of coverage at the time a defense is requested would too easily relieve the insurer of this duty. Presumably the insurer would be completely relieved of any record keeping responsibilities, thus creating a disincentive amongst insurers to maintain or search its files for coverage. Further, application of such a rule would place the entire record keeping burden upon the insured, who would also be subjected to severe ramifications in the event that a policy became lost or destroyed. Because this Court concludes that imposing such a burden would expose the insured to harsh results and relieve the insurer of its good faith duties, the Court refuses to adopt such a requirement.

██ Moreover, the Court finds that this decision does not unduly penalize the insurer since any inadequacies inherent in the insured's submission of information will be weighed by the trier of fact in its assessment of whether or not a reasonably legitimate or arguable reason existed for denying coverage. Thus, while a jury may find that the insured's failure to provide the insurer with complete policy information prior to the denial of coverage constitutes an "arguable reason" for denial, this Court refuses to do so as a matter of law.

### b) Reasonable Basis for Denial

Cigna argues that its October 28th 1991 denial of coverage was based upon its inability, despite a good faith investigatory effort, to determine the terms and conditions of "SMP 4926," the policy in

question. (*See* Cigna Reply Brief at 3.) The defendant alleges that such a refusal, especially when considered within the context of the insured's actions, cannot as a matter of law constitute bad faith. This Court disagrees.

In *Tokles & Son v. Midwestern Indemnity Co.*, 65 Ohio St. 3d 621, 605 N.E.2d 936, 943 (Ohio 1992), Ohio's supreme court explained that "[t]o withstand a motion for summary judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim."

While the insurer's brief details extensively its investigative efforts, a question of fact still remains as to the nature and intent of the policy search. Specifically Texaco alleges that Cigna's search for Vernon Morgan's lost policy was consistent with a company practice geared toward frustrating valid claims by treating the insured as an adversary. Thus, Texaco argues, Cigna's inability to find Vernon Morgan's policy and its resulting denial of coverage were the result of a procedure which was inherently unreasonable.

The lynchpin of Texaco's bad faith argument rests upon its allegation that Cigna "had the ability and the necessary information to reconstruct Vernon Morgan's policies, but deliberately chose not to[.]" (*See* id. at 15-16.) In support of its assertions, Texaco cites to deposition testimony which includes an admission by a Cigna employee that when the actual policy could not be found by either the insured or insurer, the insurer generally did not make any attempts to "reconstruct' the policies through secondary evidence. (*See* Texaco Ex. 27, Prusko Dep. at 96) Additionally plaintiff provides the testimony of Vladimira Zajac, the Cigna policy searcher who conducted the search for Vernon Morgan's complete policy. Ms. Zajac explained that although she had the knowledge and ability to reconstruct policies from endorsement lists, she had never been asked to do so. (*See* Texaco Ex. 43, Zajac Dep. at 51-57, 126)

Texaco contends that Cigna's claim file on Vernon Morgan documented that the policy's endorsements were AFIA ISO forms, which were uniform amongst Virgin Island insurers with respect to

coverage terms. *(See* Texaco Br. at 9-10.) Thus, the plaintiff contends that Cigna could have discovered the applicable terms by simply comparing the information in Vernon Morgan's claim file with a similar insured's ISO. See *id.* This contention is supported by the deposition testimony of former West Indies insurance agent Madeline Wright, who stated that not only were actual copies of ISO forms not needed to reconstruct policies, insurance companies did not want them because they created unnecessary paperwork. *(See* Ex. 39 at 13-23)

While Texaco cites to various depositions in support of its assertion, CIGNA argues that in order to determine this fact one would need the back of form L4061S, the portion of the policy that Zebedee failed to include amongst the documents sent to Cigna. See Cigna Reply Br. at 13 n.5. Therefore Cigna contends that Texaco's argument should be rejected. The validity of Cigna's assertion, however, is undercut by the testimony of its policy searcher Zajac, who testified that she was waiting for someone to authorize a search of the endorsements.

> [Mr. Curran]: . . . did it ever occur to you that it would make more sense to walk across the room and get these endorsements than it was to continue to search for the file where you could not locate it? . . . .
>
> [Ms. Zajac]: I was waiting for someone to tell me to do that. I couldn't do that on my own. Even if I thought it was proper to do that, it was claim handlers' position to reconstruct the policy. It was not my position to do that.
>
> [Mr. Curran]: Would it be fair to say that you thought it would be proper to go get those endorsements to determine the coverage? . . . .
>
> [Ms. Zajac]: Personally, yes.

(Texaco Ex. 43, Zajac Dep. at 126-27.) At the very least, Ms. Zajac's statement supports a reasonable inference that Cigna had the ability to reconstruct the policy based on the information submitted by Morgan. Thus an issue exists for the trier of fact. This issue, whether Cigna could easily have reconstructed the policy yet failed to do so because of its company practices, appears to raise an

important question for the trier of fact, the determination of which could greatly affect the reasonableness of Cigna's denial of coverage.

Nonetheless, Cigna contends that Texaco's claim must fail because "third party plaintiffs cannot produce evidence to show that the claims representatives intentionally refused to provide a defense even though they knew that the terms and conditions . . . of the policy provided coverage[.]" (Cigna Br. at 20) Cigna's contention, however, misconstrues the requirements set forth in *Justin*. The fifth prong of the *Justin* test provides that "when the plaintiff argues that the intentional failure results *from the failure of the insurer to determine the existence of an arguable basis*, the plaintiff must prove the insurer's intentional failure to determine the existence of such a debatable reason." *See Justin*, 670 F. Supp. at 617. Thus, so long as Texaco can prove that Morgan's denial was the result of a conscious effort on the part of Cigna to avoid discovering a basis for coverage, the plaintiff need not establish that Cigna was aware that the policy actually provided coverage. This conclusion is consistent with the Eight Circuit's opinion in *Tokles*. *See Tokles*, 605 N.E.2d at 943.

■ The evidence offered by Texaco supports an inference that Cigna's rejection of Vernon Morgan's claim was part of a company wide policy by which Cigna employees refused to attempt to "reconstruct" the terms of a potentially valid policy when the "actual" policy could not be found. Based on this evidence, a reasonable juror could find that the company practice, as applied in Vernon Morgan's case was inherently unreasonable, and part of an intentional failure to determine whether a valid basis for coverage existed. Therefore the Court can not conclude, as a matter of law, that plaintiff's bad faith claim should be dismissed.

### c) Actions of Insured as Bar

■ Alternatively Cigna contends that the insured's actions bar any bad faith recovery. The defendant contends that "discovery conclusively shows that the policy had never been lost and the terms and conditions were known and available to the insured's representatives at all relevant times but were never presented to the insurer prior to the declination of liability[.]" (*See* Cigna Br. at

312

34.) In support of its assertions, defendant cites the uncontested fact that the insured's counsel, John Zebedee, had copies of both the front and back of form L4061S in his possession at all times yet only provided Cigna with a copy of the front of the form (which did not include the policies terms). (*See* Cigna Br. at 14-15.) Citing to various authorities on contracts, the defendant's allege that the failure violated the insured's duty of good faith by making Cigna's performance "impossible or substantially more difficult or expensive." (*See* Cigna Br. at 34 (quoting Corbin on Contracts)). The caselaw cited by Cigna, however, appears to apply only where the breaching party's actions are intentional, a fact that is disputed by the parties. Further Texaco has submitted evidence which supports a reasonable inference that the policies could have been reconstructed by Cigna relatively easily without incurring substantial expenses. Therefore this argument must be rejected.

### d) Punitive Damages

■ Lastly, CIGNA contends that, based on the aforementioned arguments, punitive damages do not apply. Under Virgin Islands law, in order to be eligible for punitive damages, "the plaintiff is required to show that the acts complained of were outrageous, done with evil motive or reckless indifference to [the plaintiff's] rights." *Justin*, 670 F. Supp. at 617. Further, these elements must be proved by "clear and convincing evidence." *See id.* Cigna's brief argues that there is no evidence submitted that the insurer's representatives knew that coverage applied when it refused to defend Vernon Morgan, nor that its refusal was outrageous. (*See* Cigna Br. at 37.) Thus, Cigna argues that any request for punitive damages should be dismissed. Conversely, Texaco contends that Cigna's refusal to reconstruct the policies after Vernon Morgan submitted direct and secondary evidence of a policy was outrageous and recklessly indifferent to Vernon Morgan's rights. (*See* Texaco Br. at 18-19) While it appears clear that Cigna was not aware of the policy terms at the time of denial, it seems plausible that a trier of fact could find the company practice of Cigna recklessly indifferent to Vernon Morgan's rights. Therefore Cigna's request that the Court dismiss Texaco's punitive damage claim must be denied.

## 2. CIGNA SUMMARY JUDGMENT MOTION: FOUR STAR AGREEMENT

This motion is related to an issue previously decided by the Court. In a December 15, 1998 opinion, the Court denied Cigna's motion for summary judgment regarding Texaco's duty to hold the insurer harmless under the Four Star Agreement. *See In re Tutu Water Wells Contamination Litig.*, 40 V.I. 265, 32 F. Supp. 2d 808, 815-16 (D.V.I. 1998). In its previous motion Cigna contended that, pursuant to the agreement, Texaco warranted it would not bring any environmental suits against Cigna regarding cleanup of the Tutu Wells aquifer. Thus, the defendant argued, Texaco was precluded from bringing claims as Vernon Morgan's successor in interest. The Court rejected this contention, concluding that "[w]hether or not the agreement was intended to include Texaco's current position as Successor to Vernon Morgan is the ultimate issue of material fact and must be presented to a jury to determine." 32 F. Supp. 2d at 815.

Cigna now attempts to recast this argument, contending that the motion *does not contest Texaco's ability to bring the suit*, but rather alleges that the Four Star Agreement completely discharged the defendant from any liability to Texaco. (*See* Cigna Reply Br. at 3.) Cigna further alleges that the discovery conducted subsequent to the previous motion has rendered the interpretation of the pertinent provisions unambiguous, and therefore it is entitled to judgment as a matter of law. (*See* Cigna Br. at 7-8.) After reviewing the parties' submissions, this distinction appears facial, and thus this motion should be dismissed.

Cigna hinges its claim upon the language of ¶ 3.5 of the settlement agreement which provides, in pertinent part, that "Cigna shall have no further obligation under the Policies *or otherwise* to pay for . . . Environmental Damage Claims[.]" (*See* Cigna Ex. 1, Four Star Agreement at ¶ 3.5) (emphasis added). The insurer contends that the "or otherwise" language of the provision unambiguously provides that Texaco *discharged Cigna from liability* for *all* Tutu related claims, including those resulting from a third party's assignment of rights. Therefore, defendant argues, Texaco can not prove a key element of its case: Cigna's liability.(*See* Cigna Reply Br. at 3) This assertion, however, ignores the fact that the

release from liability is limited solely to "Environmental Damage Claims." Thus, in order for Cigna to be discharged from liability, this Court would have to find that the assignment from Vernon Morgan was, as a matter of law, included within the scope of "Environmental Damage Claims." Such a finding, however, would implicitly overrule this Court's prior decision.

Although Cigna argues to the contrary, this Court finds that its prior decision previously determined that ¶ 3.5 did not, as a matter of law, preclude Cigna from liability in the instant action.

> Cigna specifically argues that in reading *the definition of "Environmental Damage Claims"* stated in ¶ 2.5 *in conjunction with the Release language of* ¶ *3.5,* "it is clear that Texaco covenanted and agreed not to bring an action of the nature now pending in this Court against Cigna." Despite this contention, *the Release Agreement* does not as a matter of law state that if Texaco becomes a real party in interest to another person or entities' claims, it may not pursue those claims.

32 F. Supp. 2d at 815 (emphasis added) (citation omitted). Not only does the language cited above specifically address ¶ 3.5 of the agreement, it clearly states that the Court's interpretation *applies to the agreement as a whole.* Thus Cigna's attempt to confine the rationale of the Court's decision solely to Texaco's *ability to pursue claims* against Cigna ignores the breadth of the opinion's language.

Additionally, the position that Cigna suggests this Court embrace requires rejecting a theory of contract interpretation that the insurer has advocated throughout this litigation; that an agreement must be construed so as to give effect to all of its parts. (*See* Cigna Br. at 20-21.) Adopting the technical distinction advocated by Cigna (i.e. that a question of fact exists as to the scope of the warranty portion of the agreement but not to the liability provision) would render the warranty provision irrelevant. Texaco's ability to bring a suit would be meaningless if ¶3.5 prevented it from proving liability. Thus the Court concludes, consistent with its prior opinion, that a question of fact remains with respect to Cigna's discharge of liability under ¶ 3.5 of the agreement.

In its reply brief Cigna contends that the Court's prior decision, rendered before the close of discovery, was "unenlightened by an

interpretation of the release provisions by the parties." (*See* Cigna Reply Br. at 2). Accordingly, Cigna contends that "given the interpretation by Texaco's representatives that has been developed through discovery of the release provisions, Texaco cannot as a matter of law, establish liability on the part of Cigna and Fireman's Fund under Section 4" of the agreement. (*Id.* at 3).

■ In support of its assertion that Texaco's third party assignment claim "violates the clear intent of the settlement agreement" Cigna cites to the deposition of Mark Wood, one of Cigna's principal negotiators of the Four Star Settlement. (*See* Cigna Br. at 17-18.) Wood testifies that:

> *[I]f [the topic of] assignments had come up* and *if* Texaco, for example, had insisted on the right with respect to their 1500 gas stations to be able to take an assignment from any coverage . . . then *my expectation is* that [Fireman's Fund] would not have paid the same amount of money that they paid for the settlement[.]

(*See* Cigna Br. at 18 (emphasis added) (alterations in original)) Mr. Wood's statement acknowledges that third party assignments were not discussed by the parties during negotiations and further offers what could be best described as his "guess" at what would happen if they were. These statements, on their own, appear to raise a question of fact as to whether the settlement contemplated the type of claims at issue. Thus, it appears that the scope of ¶ 4 of the Four Star Agreement, as well as the issue of Cigna's liability under the agreement, remain questions for the trier of fact.

## 3. TEXACO'S SUMMARY JUDGMENT MOTION ON AGENCY & NOTICE

Texaco requests that the Court grant partial summary judgment as to agency issues concerning the insurers and the West Indies Insurance Agency ("West Indies"). The plaintiff requests that the Court find, as a matter of law, that West Indies acted as an agent of the defendants Cigna (via a policy issued by Fireman's Fund) and General Accident and therefore defendants' affirmative defense of lack of notice should be dismissed as a matter of law.

316

In its brief, Texaco asserts that the record undisputedly demonstrates that: (1) West Indies acted as the general agent for both Fireman's Fund and General Accident; and (2) Vernon Morgan timely notified West Indies about the claims filed against him. (*See* Texaco Br. at 7-8). Thus the plaintiff concludes "West Indies' knowledge of Vernon Morgan's claims . . . is chargeable to both Fireman's Fund and General Accident . . . [thereby] defeat[ing] the Defendant's affirmative defenses of lack of notice as a matter of law." (Id. at 8).

While an examination of the Virgin Islands' law reveals nothing directly on point, the majority view clearly holds that an agent's knowledge or notice "is ordinarily imputed to the insurer." 3 Couch on Insurance § 49:23 (3d ed. 1995); *see also Hartford Accident and Indem. Co.v. Northwest Nat'l Bank of Chicago*, 228 F.2d 391, 397-98 (7th Cir. 1955) Therefore, were West Indies deemed to be acting as the insurers' general agent at the time of notification, the defendants would be bound by such notice. *See, e.g., Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*, 947 F. Supp. 102, 103 (S.D.N.Y. 1996); *Reinhardt v. Security Ins. Co.*, 321 Ill. App. 324, 53 N.E.2d 13, 17 (Ill. App. Ct. 1943).

In support of its agency assertion, Texaco submits the deposition testimony of Madeline Wright, who testified that West Indies served during various periods of time as a general agent for both Fireman's Fund and General Accident. (*See* Texaco Ex. 39 at 8-10.) In addition, plaintiff submits a copy of an agency agreement entered between West Indies and Insurance Company of North America (hereinafter "North America"), a Cigna company which acquired Fireman's Fund policies in the Virgin Islands. (*See* Texaco Exs. 21, 24). The agreement provides that West Indies will serve as North America's general agent and will maintain the licensing requirements of the Virgin Islands. (*See id.* at 24). Further, the plaintiff cites to the declaration pages of each policy, which identify West Indies as the agent for both Fireman's Fund and General Accident. (*See* Texaco Ex. 2). Thus based on Texaco's submissions it appears that, at least at the time the policies were issued, West Indies was the agent for both Cigna (via Fireman's Fund) and General Accident.

317

## a) Cigna

Cigna does not dispute this contention, but rather argues that West Indies was not the agent of the insurers "for all purposes at all times." (Cigna Br. at 2.) The defendant asserts two arguments related to this contention: (1) West Indies served as a dual agent to both Vernon Morgan and Fireman's Fund, thereby creating an issue of fact as to whether West Indies was acting on behalf of Fireman's Fund or Vernon Morgan; and (2) the agency relationship between Fireman's Fund and West Indies was terminated in 1985 — approximately four years prior to the suits against Morgan. (*See* Cigna Br. at 2, 7).

### 1. *Dual Agency*

Cigna's first argument, that the existence of a dual agency relationship created a question of fact for the jury, does not appear supported by Virgin Islands law. The Virgin Islands Code provides, in pertinent part, that a "broker may be licensed as . . . an agent as to insurers appointing him as agent. The *sole relationship* between a broker and an insurer as to which he is licensed as an agent *shall, as to transactions arising during the existence of such agency appointment, be that of insurer and agent.*" *See* V.I. Code Ann. tit. 22, § 766 (1993) (emphasis added). While neither the Court nor the parties' research revealed any caselaw interpreting this provision, the statute's mandate appears clear: an insurer is bound by all acts performed by its agent during the course of the agency relationship. Here, an examination of the agency agreement between North America and West Indies provides undisputed proof that West Indies served as a licensed agent, thus it appears that the statutory mandates of § 766 clearly apply to Cigna. (*See* Omnibus Facts at Ex. 24).

Cigna, however, contests the statute's applicability in the instant matter, arguing that since the statute "does not define the relationship between brokers and insureds, it does not preclude a finding of dual agency." (*See* Cigna Br. at 7). This argument misses the point: regardless of whether West Indies was also acting on Vernon Morgan's behalf with respect to the notice of claims, VI law has clearly established that, assuming the notification occurred during the agency relationship, West Indies was acting on behalf of the defendants as a matter of law. A finding of an agency relationship

318

with Vernon Morgan would not extinguish this relationship.

This decision is consistent with the holding in *City of Greensboro v. Reserve Ins. Co.*, 70 N.C. App. 651, 321 S.E.2d 232, 235-36 (N.C. Ct. App. 1984), a case this Court finds analogous to the instant matter. In *Greensboro*, a North Carolina appellate court affirmed a lower court's grant of summary judgment concerning a similar dual agency issue. The *Greensboro* court held that notice served upon a dual agent constituted notice to the insurer, notwithstanding the existence of a dual agency relationship. *See id.* at 656. In its opinion, the court rejected the insurer's argument that the agency relationship was limited in nature, reasoning that the agent possessed the implied actual authority to accept notice. *See Id.*

■ It would appear that the rationale of the *Greensboro* court would apply with greater force here, where a broad agency relationship is clearly defined by the Virgin Islands Code. Thus, the Court concludes that *so long as the notice occurred during the pendency of the agency relationship,* any notice submitted by Vernon Morgan to West Indies constitutes notice to Cigna.

## 2. Duration of Agency Relationship

In its brief, Cigna contends that Fireman's Fund terminated the agency relationship between it and West Indies prior to the receipt of Vernon Morgan's complaint. (*See* Cigna Br. at 7) Thus, argues Cigna, the notice served upon West Indies had no binding effect upon the insurer. (*See* Id.) After a careful examination of the record, this argument appears without merit.

■ While Fireman's Fund may have terminated its agency relationship in 1985, Cigna had already assumed "all the rights, obligations and liabilities" for *all* Fireman's Funds insurance policies issued in the Virgin Islands prior to the agreement's termination. (*See* Texaco Ex. 21) Further, the record includes an agency agreement between West Indies and Insurance Company of North America (hereinafter "North America"), a Cigna company which acquired Fireman's Fund policies in the Virgin Islands. (*See* Texaco Exs. 21, 24) The agreement, dated January 1st 1985 — over four years prior to Morgan's coverage request, expressly designates West Indies as the agent for North America. This evidence conclusively proves that at the time Vernon Morgan delivered the

319

copies to West Indies, an agency relationship existed between West Indies and North America, the Cigna company that had assumed the obligations of the relevant Fireman's Fund Policy. Therefore, based on the evidence available in the record, as well as Title 22 § 766 of the Virgin Islands Code, Texaco's motion for partial summary judgment on this matter should be granted with respect to Cigna.

## b) General Accident

General Accident Insurance ("GAI") filed a separate opposition to this motion. The opposition brief mirrors the arguments proffered by Cigna, with an emphasis on the allegedly limited nature of the relationship between West Indies and GAI. (*See* General Accident Br. at 7) Additionally, General Accident contends that it never received notice of the claims from West Indies. (*See id.* at 2) These facts, argues GAI, coupled with the alleged agency relationship between West Indies and Vernon Morgan, require that the issue of notice be submitted as a question of fact for the jury.

General Accident cites caselaw from various jurisdictions in support of this proposition. However, the Court finds that these cases are distinguishable from the instant matter, which includes a statutory provision that clearly addresses issues of insurer-agent liability.[3] As discussed above, the statute appears to issue a mandate that an insurer is bound by *all* acts performed by its agents during the existence of the agency relationship. *See* V.I. Code Ann. tit. 22, § 766. The declaration sheet of the GAI policy issued to Vernon Morgan clearly identifies West Indies as General Accident's *general agent*. (*See* Tex. Ex. 55). Moreover, it is significant to note that General Accident's brief effectively acknowledges that West Indies was an *authorized* general agent of the insured.[4] These

---

[3] While the defendant's brief did cite one Virgin Islands case, *Alexander v. Montoute*, 20 V.I. 34 (1983), the Court finds it unpersuasive since it involved issues of automobile liability insurance, an area of Virgin Islands law that, at the time of the case, was controlled by Title 20, which expressly provided that the general laws of insurance codified in Title 22 were inapplicable to instances of auto insurance. *See* id. at 38 n.3. Further, the court notes that the case dealt with issues of a brokers liability to the insured, which is not the issue before the Court. *See id.* at 39-40.

[4] In its opposition brief General Accident stated that "[i]t is also known that West Indies Insurance *was authorized to represent* numerous *insurance companies including GAI*

facts support but one reasonable inference, that West Indies served as the licensed agent of General Accident, and was therefore bound by the wording of Title 22, § 766 of the Virgin Islands Code.

■ GAI further contends that it can not be held liable because West Indies failed to properly notify General Accident. This argument, however, is refuted by the fact that notice to the agent is legally deemed notice to the insurer. *See* 8 John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4736 (1981); *Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*, 947 F. Supp. 102, 103 (S.D.N.Y. 1996); *Reinhardt v. Security Ins. Co.*, 321 Ill. App. 324, 53 N.E.2d 13, 17 (Ill. App. Ct. 1943). Further, the position advocated by General Accident was expressly refuted in Appleman's Insurance Law and Practice, where it was noted that "notice to a general agent has been held to be sufficient, *even though such agent was derelict in forwarding the notice to the home office claim department.*" 8 Appleman at § 4736 (1981) (emphasis added). Thus, while West Indies may have failed to properly discharge the duty it owed to General Accident, such failure would have no impact on Vernon Morgan, whose notification to West Indies constituted a legally sufficient form of notice to General Accident.

Allowing General Accident or Cigna to limit their relationship based upon the facts of a particular situation would serve to undermine the apparent purpose of the applicable Virgin Islands statute. Therefore, the Court finds that partial summary judgment should also be granted with respect to defendant General Accident.

## 4. TEXACO'S MOTION: COMPARATIVE AND REVERSE BAD FAITH

Texaco's motion seeks dismissal of the insurers' affirmative defense of comparative bad faith, which would proportionately reduce any Texaco recovery by the plaintiff's bad faith conduct, as well as its counterclaim of reverse bad faith, which contemplates

---

[General Accident]." (*See* General Accident's Opposition Br. at 7 (emphasis added)). Additionally, while GAI specifically addressed paragraph eight of Texaco's undisputed facts, alleging that it was inaccurate because the plaintiff failed to include statements that West Indies was the broker for Vernon Morgan and the Tutu Service Station, it did not contest Texaco's statement of fact that West Indies was the general agent for General Accident. (*See id.* at 2).

an affirmative recovery by the insurers for the plaintiff's bad faith actions.

### a) Motion With Respect to Cigna

Texaco contends that the Virgin Islands has yet to address issues of comparative or reverse bad faith. The plaintiff further notes that the Restatement on Torts is silent with respect to these matters. Accordingly Texaco contends that pursuant to Title 1, § 4 of the Virgin Islands code, "the rule established by the majority of jurisdictions on this subject should be followed." (Texaco Br. at 7) Citing caselaw from various jurisdictions, Texaco contends that the clear majority rule supports rejecting the defendants' comparative and reverse bad faith claims as a matter of law.

The defendant, however, contests Texaco's characterization of the current status of bad faith caselaw. Specifically the defendant contends that Virgin Islands caselaw, as well as the law of the states in the Third Circuit, support recognition of both reverse and comparative bad faith. (*See* Cigna Br. at 6-7.) Thus, in order for the Court to determine which law to apply, it must first determine whether these issues have been addressed by the laws of the Virgin Islands.

### 1. 1. *Virgin Islands Law*

Cigna argues that Virgin Islands law recognizes both comparative and reverse bad faith. However, a careful examination of the defendant's argument reveals that this statement is inaccurate. In support of its contention, the defendant cites the Justin case, as well as this Court's prior *Tutu* opinion. In *Justin,* the court held that an insured could recover in tort for an insurer's bad faith breach of an insurance contract. *See Justin,* 670 F. Supp. at 616. The court's opinion, however, did not consider the imposition of tort liability upon the insured. *See generally, id.* Moreover, an examination of the language, as well as the elements of the tort articulated by the court, leads to the conclusion that the cause of action was limited to instances of *insurer* liability. *See id.* (listing the elements of the bad faith tort and explaining that when a claim is "made out, it imposes tort liability for an *insurer's refusal* . . . where there exists no legitimate reason either based in law or fact *to deny the insured's* claim.") (emphasis added). Thus the specific language in *Justin*

322

does not support the broad interpretation advocated by Cigna, but rather evinces an intent to limit exposure to tort liability for bad faith breaches of an insurance contract solely to insurers.

The defendant's cite to the prior Tutu opinion appears likewise misplaced. In the opinion, the Court held that Texaco owed Cigna a contractual duty of good faith and fair dealing with respect to the Four Star release agreement. *See In re Tutu Water Wells Contamination Litigation*, 40 V.I. 279, 32 F. Supp. 2d 800, 808 (D.V.I. 1998). Thus, the Court concluded, the defendant had stated a claim for a bad faith breach related to the settlement agreement. *See id.* While the language of the opinion arguably implies a broader interpretation of the scope of the "bad faith" tort, *it is important to note that the decision entailed a release agreement, not an insurance contract.* This distinction, as discussed more fully below, is important because the unique concerns involved in the insurer-insured relationship were not present within the context of the Four Star Agreement. The absence of similar circumstances readily distinguishes the Court's prior decision from the instant matter and renders Cigna's argument unpersuasive. Thus the Court concludes that these issues represent a matter of first impression for the Virgin Islands and therefore the Court must look to the common law of the United States for guidance. *See* V.I. Code Ann. tit. 1, § 4 (1995).

### 2. *Analysis of Common Law*

#### *Reverse Bad Faith*

The doctrine of reverse bad faith "creates an independent *tort* that allows an insurer to seek affirmative relief for an insured's breach of the duty of good faith and fair dealing." *Turley v. Fidelity and Deposit Ins. Co. of Maryland*, 1996 OK 105, 928 P.2d 298, 307 (Okla. 1996). The Restatements on Torts is silent as to both comparative and reverse bad faith. Accordingly, the Court's decision will be guided by the "rules of the common law . . . as generally understood and applied in the United States." V.I. Code Ann. tit. 1, § 4. Citing decisions from the Supreme Courts of Ohio,[5]

---

[5] *See Tokles & Son, Inc. v. Midwestern Indemnity Co.*, 65 Ohio St. 3d 621, 605 N.E.2d 936 (Ohio 1992).

Oklahoma,[6] and Iowa,[7] Texaco contends that each jurisdiction which has considered an insurer's "reverse bad faith" claim has refused to recognize such a remedy. Therefore the plaintiff argues that defendants' reverse bad faith claims must be rejected.

*In Tokles & Son, Inc. v. Midwestern Indemnity Co.*, 65 Ohio St. 3d 621, 605 N.E.2d 936, 945 (Ohio 1992), the Ohio Supreme Court rejected an insurer's reverse bad faith claim, noting that "[t]here are other avenues for the insurer to pursue in the event that an insured submits a fraudulent claim. An insurer drafts the policy, can refuse the insured's claim, and could assert a cause of action against the insured for fraud." The *Tokles* court reasoned that the inherent disparity of financial resources between an insured and insurer necessitated recognition of a "bad faith" claim for the former, but not the latter. *See id.* Similarly, another jurisdiction that refused to recognize a reverse bad faith cause of action noted that "[a]lthough the insured depends upon the insurer for protection, the insurer does not depend on the insured in the same manner." *See Agricultural Ins. Co. v. The Superior Court of Los Angelos County*, 70 Cal. App. 4th 385, 387 (App. Div. 1999). Thus many courts that have considered a cause of action for reverse bad faith have refused to do so because of the significant power advantage enjoyed by the insurer.

In a case somewhat similar to the facts of the instant matter, the Oklahoma Supreme Court rejected the argument that a failure by the insured to provide the insurer with adequate notice of coverage-related information constituted an actionable tort. *See First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland*, 928 P.2d 298, 308 (Ok. 1996). Characterizing the insured's acts as non-feasance, the *Turley* court refused to acknowledge such a cause of action, reasoning that an insured's misperformance of its contractual duty is neither a "free standing" ex contractu breach, nor a civil harm actionable in tort[.]" *Id.*[8] Citing *Turley*, as well as

---

[6] *See First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland*, 928 P.2d 298 (Ok. 1996).

[7] *See Johnson v. Farm Bureau Mutual Ins. Co.*, 533 N.W.2d 203 (Iowa 1995).

[8] However, while the *Turley* court refused to acknowledge a 'reverse bad faith' cause of action for *non*-feasance by the insured, it is important to note that it expressly stated that the outcome might be different in instances where the improprieties alleged concern an

the above mentioned cases, Texaco argues that Cigna's reverse bad faith counterclaim should be rejected.

Conversely Cigna contends that the law of the 'sister states' in the Third Circuit require the Court to recognize a reverse bad faith claim. The defendant's argument is based upon the fact that most states in the Third Circuit recognize that both the insured and insurer are subject to the implied duty of good faith that exists with respect to all contract actions. *See Greater New York Mutual Ins. Co. v. North River Ins. Co.*, 872 F. Supp. 1403, 1407-08 (E.D.Pa 1995); *Kramer v. Tribe*, 1994 U.S. Dist. LEXIS 13077 (D.N.J. May 11, 1994). This contention, however, fails to recognize that *breach of such a duty typically leads to a cause of action grounded in contract, not tort law*.

Caselaw strongly suggests that tort liability for breach of a contractual duty should only be created in exceptional circumstances. *See, e.g., Wailua Assoc. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 560 (1998) (explaining that while a breach of the implied duty of good faith normally gives rise to an action in contract, the unique nature of the *insurer's* duty under an insurance contract constituted an "exception" which justified imposition of tort liability upon the insurer); *Kransco v. American Empire Surplus Lines Ins. Co.*, 54 Cal. App. 4th 1171, 63 Cal. Rptr. 2d 532, 538 (1997) (noting that "contractual breaches do not implicate fault and are generally excluded from comparative fault allocations"). Indeed, it is the precise inequity of bargaining power between the insured and insurer that has mandated protection of the insured via "bad faith" tort liability. *See Stephens v. Safeco Ins. Co. of America*, 258 Mont. 142, 852 P.2d 565, 567-68 (Mont. 1993) (reasoning that because "in the insurance context, the insurer occupies the superior bargaining position," a breach of the duty of good faith by the insurer constituted an actionable tort, whereas a breach by the insured did not). Thus, the mere assertion by Cigna that the insured shares a similar contractual duty of good faith, without

---

insured's acts of *mal*feasance. "We . . . express no opinion on, whether an insured's active wrongdoing (malfeasance) . . . would constitute a tort committed against the insurer or call for a comparison of the insured's contributory fault in a bad-faith action against the insurer." *Id.* at 308 n.38. Thus while *Turley* supports the contention that courts should not provide a remedy for 'reverse bad faith' claims grounded in an insured's non-feasance, its applicability in instances of malfeasance is questionable.

more, necessarily fails to rise to the "exceptional" level required for imposition of tort liability.

This is especially so when a review of the caselaw reveals that while the majority of jurisdictions have allowed an affirmative tort recovery by an insured pursuant to an insurer's bad faith violation of an insurance contract, *see, e.g., Weber v. State Farm Mutual Automobile Ins. Co.*, 873 F. Supp. 201, 204 (S.D. Iowa) (noting that the majority of jurisdictions recognize first party bad faith claims against an insurer), *none* have elected to extend its protection to insurers in the context of such agreements. Indeed, some have expressly declined to do so. *See Tokles*, 605 N.E.2d at 945; *Turley*, 928 P.2d at 308; *Johnson*, 533 N.W.2d at 207. Thus, the caselaw cited by Cigna fails to support its contention that the tort of reverse bad faith has been adopted by our "sister states" and therefore its argument must be rejected.

Alternatively the defendant contends that the authorities cited by Texaco are distinguishable from the instant matter, and are therefore unpersuasive. Cigna claims that both *Tokles* and *Agricultural Ins. Co.* are inapplicable because first party claims were involved. *See id.* at 20-23. The insurer argues that "allowing an insured, but not an insurer, to maintain a bad faith action in the third party context, while limiting the insurer to its contract damages, creates an imbalance which the recognition of the tort of bad faith was intended to prevent." (*See* Cigna Br. at 24). Distinguishing between the nature of first and third party actions, the defendant contends that, "unlike in the first party context . . . an insured and an assignee can (surreptitiously or otherwise) commit acts which are contrary to the insured's obligation to the insurer of good faith and fair dealing, which acts are aimed at or have the result of creating or exacerbating liability on the part of the insurer." (*Id.* at 21) Thus, argues Cigna, the "refusal to recognize reverse bad faith would permit tortious conduct to result in damages for which the victim of the tortious conduct — the insurer — has no other remedy." *Id.* at 23. Additionally, Cigna claims that any third party cases cited by Texaco are unpersuasive because the cases did not involve allegations of malfeasance, a scenario upon which the *Turley* court expressly reserved judgment. *See Turley*, 928 P.2d 308 at n.39.

■ While Cigna makes some good arguments for distinguishing this matter from the authorities cited by the plaintiff, it can not point to a single jurisdiction which recognizes "reverse bad faith." Nor does the Restatement on Torts recognize such a claim. Pursuant to Title 1, Section 4 of the Virgin Islands Code, if there is no law on point in either the V.I. or Restatements, we look to the common law of the United States. Since an examination of the current state of the law reveals that "reverse bad faith" has not been recognized by any jurisdiction in the United States, the Court must dismiss Cigna's counterclaim for reverse bad faith.

*Comparative Bad Faith*

Comparative bad faith "establishes an affirmative defense, premised upon principles of comparative fault, which allocates fault and apportions damages according to harm inflicted by both the insurer's and insured's bad-faith conduct." *Turley*, 928 P.2d at 307. Texaco's motion for partial summary judgment seeks the dismissal of the defendants' comparative bad faith defenses.

Plaintiff's brief argues that the majority of jurisdictions which have considered affirmative defenses grounded in comparative bad faith have rejected them. An analysis of the relevant caselaw reveals that Texaco's assertion is accurate. Research has revealed that the Montana Supreme Court,[9] appellate courts in California,[10] Oregon,[11] and Texas,[12] as well as a district court in Hawaii,[13] have

---

[9] *See Stephens v. Safeco Ins. Co of America*, 258 Mont. 142, 852 P.2d 565 (Mont. 1993).

[10] *See Kransco v. American Empire Surplus Lines Ins. Co.*, 54 Cal. App. 4th 1171, 63 Cal. Rptr. 2d 532, 538-39, 538 n.1 (Ct. App., First Dist. 1997) (concluding that "the weight of authority is against 'comparative bad faith'" and that the fundamental disparity between the insured and insurer warrants against application of comparative fault principles against the insured). It is important to note that there is currently a split in *California caselaw. In California Casualty General Ins. Co. v. San Bernardino*, 173 Cal. App. 3d 274, 218 Cal. Rptr. 817 (Ct. App., Fourth Dist. 1985), California's Fourth District appellate division held that "comparative bad faith" constituted a valid affirmative defense. The issue is currently before California Supreme Court.

[11] *See Stumpf v. Continental Cas. Co.*, 102 Ore. App. 302, 794 P.2d 1228 (Or. App. 1990).

[12] *See Southland Lloyd's Ins. Co. v. Tomberlain*, 919 S.W.2d 822, 832 n.5 (Tex.Ct. App. 1996) (reasoning that defendant "urges this court to recognize a new defense in bad faith insurance cases, which it calls "comparative bad faith." [The defendant] likens this defense to that of comparative negligence. It suggests no authority to support our adopting such a doctrine, and we decline to do so.")

[13] *See Wailua Assoc. v. Aetna Casualty and Surety Co.*, 183 F.R.D. 550, 559-60 (D. Haw. 1998).

refused to recognize such an affirmative defense. Further, while it expressly reserved judgment in instances where the insured engages in malfeasance, the Oklahoma Supreme Court rejected "comparative bad faith" in actions grounded upon assertions of misfeasance or nonfeasance by the insured. *See Turley*, 928 P.2d at 308 & n.39. Similar to courts that have considered reverse bad faith claims, most jurisdictions that have refused to acknowledge comparative bad faith have based their decisions on the theory that the inherent inequality between the insurer and the insured warrants an imposition of tort liability upon the insurer for breaches of the contractual duty of good faith, but not the insured. *See, e.g., Wailua Assoc. v. Aetna Casualty and Surety Co.*, 183 F.R.D. 550, 561 (D. Haw. 1998)

Although it appears that a majority of courts have rejected affirmative defenses of "comparative bad faith," there are some jurisdictions which allow an insurer to offset an insured's recovery by the plaintiff's bad faith. In *California Casualty General Ins. Co. v. Superior Court*, 173 Cal. App. 3d 274, 218 Cal. Rptr. 817 (Ct. App., Fourth Dist. 1985), a California appellate division court reasoned that:

> [A]n insurer . . . has a reasonable expectation that . . . the insured will . . . furnish it with all the information and evidence pertinent to the claim that is known to the insured. *If a failure of the insured to do so results in delaying or impeding the investigation of the claim by the insurer . . . any . . . loss . . .* caused the insured by virtue of any such nonpayment or delay in investigation or payment will have been caused either wholly or in part by the conduct of the insured. *We perceive no sound reason, nor is . any suggested, why the doctrine of comparative fault enunciated and applied to negligent conduct . . . should not be applicable in bad faith cases.*

218 Cal. Rptr. at 823 (emphasis added). Thus, the fourth district of California's appellate division held that an affirmative defense of "comparative bad faith" existed in a factual situation similar to the instant case, where the allegations of bad faith concern the insured's and Texaco's failure to provide adequate information to the insurer.

While *California Casualty* provides support for the comparative bad faith defense, it is important to note that a subsequent California court of appeals decision in the first district rejected the fourth district opinion and refused to recognize the defense. *See Kransco v. American Empire Surplus Lines Ins. Co.*, 54 Cal. App. 4th 1171, 63 Cal. Rptr. 2d 532, 538-39 (Ct. App., First Dist. 1997), *review granted*, 942 P.2d 414 (May 26, 1999).

Cigna cites numerous other decisions in support of its contention. However, the only case that arguably supports a comparative bad faith defense is *State Farm Fire & Casualty Co. v. Gandy*, 880 S.W.2d 129 (Tex. Ct. App. 1994), *rev'd on other grounds*, 925 S.W.2d 696 (Tx.1996). In *Gandy*, a Texas appellate court held that the trial court erred by refusing to submit an insurer's requested jury questions concerning contributory negligence resulting from the insured's "comparative bad faith, negligence and/or contributory responsibility." *See id.* at 137. *Gandy*, however, is distinguishable since it did not involve an insurer's refusal to defend the insured, but rather an alleged failure by the insurer to provide an *adequate* defense. *See id.* at 132. This important distinction, coupled with the fact that the decision was ultimately reversed, weakens *Gandy's* persuasive authority.

■ Although there is existing caselaw which supports the adoption of comparative bad faith, the clear weight of authority holds to the contrary. While Cigna argues that many of the cases cited by Texaco were decided based on the facts, not as a matter of law, the Court finds this characterization inaccurate. Thus the Court concludes, consistent with the mandates of the Virgin Islands Code, that the common law as understood throughout the United States does not recognize the affirmative defense of comparative bad faith. Accordingly Texaco's request for partial summary judgment shall be granted.[14]

### b) Motion with Respect to General Accident

General Accident's opposition to this motion emphasized the

---

[14] The Court notes that this portion of the opinion addresses only Texaco's motion for partial summary judgment with respect to the defendants' tort claims for comparative and reverse bad faith. The decision does not affect any other counterclaim or affirmative defense asserted by the insurers against Texaco.

factual nature of the plaintiff's alleged bad faith. Since the Court refuses as a matter of law to recognize either comparative or reverse bad faith, allegations of plaintiff's alleged bad faith conduct are irrelevant. Therefore Texaco's motion for partial summary judgment with respect to defendant General Accident is likewise granted.

## III. CONCLUSION

For the above stated reasons, CIGNA's motions for summary judgment are denied and Texaco's motions for partial summary judgment are granted.

THIS MATTER having come before this Court on TEXACO, INC. and TEXACO CARIBBEAN, INC., ("Texaco") Successor to Vernon Morgan's Motion for Partial Summary Judgment against Defendants' Fireman's Fund Insurance Company, Cigna Corporation, AFIA (improperly designated as AFIA Worldwide Insurance), Cigna International Corporation and Insurance Company of North America ("CIGNA"),[15] and General Accident regarding Defendants' defenses and counterclaims for Reverse and Comparative Bad Faith and Lack of Notice; and on the motion of Fireman's Fund Insurance Company and CIGNA for Summary Judgment regarding Bad Faith and the Four Star Agreement;

The Court having reviewed the record and the submissions of the parties; and

For the reasons stated in the Court's opinion of this date;

IT IS this 24th day of November, 1999 HEREBY

---

[15] The Court notes that recently, at oral argument held on November 18th, 1999, the parties stipulated on the record that the named defendants AFIA, CIGNA Corporation, CIGNA International Corporation and Insurance Company of North America were dismissed with prejudice from the case while Fireman's Fund Insurance Company ("Fireman's Fund") remained as a defendant. The parties further agreed that any action by Cigna entities would be attributable to defendant Fireman's Fund. Because this stipulation occurred subsequent to the filing of the instant motion, and since the parties agreed that any actions by Cigna entities will be attributable to Fireman's Fund, for purposes of administrative convenience "Cigna," signifies the actions of Third-Party Defendants CIGNA Corporation, Fireman's Fund Insurance Company, ("Firemen's Fund"), AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America.

ORDERED that TEXACO's Motions for Partial Summary Judgment regarding Agency and Notice and Reverse and Comparative Bad Faith are GRANTED;
and it is FURTHER ORDERED THAT CIGNA's Motions for Summary Judgment regarding Bad Faith and the Four Star Agreement are DENIED.

No costs.